**BOYAMIAN LAW, INC.**
MICHAEL H. BOYAMIAN, SBN 256107
ALFRED MOVSESYAN, SBN 278560
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
T: (818) 547-5300 | F: (818) 547-5678
E-mail(s):     michael@boyamianlaw.com,
               alfred@boyamianlaw.com

Orlando Villalba (SBN 232165)
Orlando.Villalba@capstonelawyers.com
Helga Hakimi (SBN 257381)
Helga.Hakimi@capstonelawyers.com
Joseph D. Parsons (SBN 340074)
Joey.Parsons@capstonelawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

Attorneys for Plaintiff JOSE PULIDO-PEREDO,
individually and on behalf of all others similarly situated.

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE PULIDO-PEREDO, individually, and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>    vs.<br><br>QG PRINTING II, LLC, a Connecticut limited liability company, QUAD GRAPHICS, INC., a Wisconsin corporation, 74 QG PRINTING LLC, an unknown entity, and DOES 1-100,<br><br>         Defendants. | CASE NO.: 2:24-cv-01505 AC<br><br><u>**CLASS ACTION**</u><br><br><u>**FIRST AMENDED COMPLAINT FOR**</u><br><br>1.  FAILURE TO PAY COMPENSATION FOR ALL HOURS WORKED (LABOR CODE §§ 216 AND 1194)<br>2.  FAILURE TO PAY MINIMUM WAGE (LABOR CODE §§ 216 and 1194 et seq.);<br>3.  FAILURE TO PAY OVERTIME COMPENSATION (LABOR CODE §510);<br>4.  WAITING TIME PENALTIES (LABOR CODE §§ 201-203);<br>5.  FAILURE TO PROVIDE MEAL & REST PERIODS (LABOR CODE § 226.7 and 512);<br>6.  UNREIMBURSED BUSINESS EXPENSES (LABOR CODE §§ 2800 & 2802); and |

7. UNFAIR COMPETITION
(BUSINESS AND PROFESSIONS
CODE § 17200, et seq.)

**JURY TRIAL DEMANDED**

Plaintiff JOSE PULIDO-PEREDO ("Plaintiff"), individually, and on behalf of all similarly situated individuals, alleges as follows:

**<u>GENERAL ALLEGATIONS</u>**

1. This is a proposed class action brought against Defendants QG PRINTING II, LLC, a Connecticut limited liability company, (hereinafter referred to as "QGP"), QUAD GRAPHICS, INC., a Wisconsin corporation, and DOES 1-100 inclusive (collectively, "Defendants" or "Company"), on behalf of Plaintiff and all other individuals who were employed as non-exempt, hourly employees or any other similarly situated non-exempt, hourly positions (collectively, "Class Members") by Defendants at the Company's West Sacramento warehouse facility at any time during the four years preceding the filing of this action, and continuing while this action is pending ("Class Period"), and who were denied the benefits and protections required under the Labor Code and other statutes and regulations applicable to employees in the State of California.

2. During the Class Period, Defendants:

    a.    failed to pay wages for all hours worked, including for hours worked in excess of eight hours a day or forty hours a week, by the Non-exempt hourly employees ;

    b.    failed to pay minimum wages due to the Non-exempt hourly employees;

    c.    failed to pay overtime compensation due to the Non-exempt hourly employees who worked on the seventh consecutive day;

    d.    failed to pay the Non-exempt hourly employees compensation in a timely manner upon their termination or resignation;

    e.    failed to maintain complete and accurate payroll records for the Non-exempt hourly employees;

    f.    failed to provide reporting time pay to Non-exempt hourly employees in

1           violation of the applicable Industrial Welfare Commission wage orders, and

2           California Labor Code sections 204 and 1198;

3       g.     failed to provide meal periods and rest periods in accordance with and in

4           violation of the applicable Industrial Welfare Commission wage orders, and

5           California Labor Code sections 226.7 and 510.

6       h.     failed to pay the additional hour of pay for not providing meal periods and

7           rest periods in accordance with and in violation of the applicable Industrial

8           Welfare Commission wage orders, and California Labor Code sections 226.7;

9       i.     failed to indemnify the Non-exempt hourly employees for all necessary

10          business expenditures or losses;

11       j.     wrongfully withheld wages and compensation due to the Non-exempt hourly

12          employees; and

13       k.     committed unfair business practices in an effort to increase profits and to

14          gain an unfair business advantage at the expense of the Non-exempt hourly

15          employees and the public;

16     3.     The foregoing acts and other acts by Defendants violated numerous provisions of

17 California law, including Labor Code §§ 200, 201, 202, 203, 204, 210, 216, 221, 223, 225.5, 226.3,

18 226.7, 510, 512, 516, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199,

19 2800, 2802, 2804, and 2698 et seq. and the applicable Wage Orders issued by the Industrial Welfare

20 Commission (collectively, "Employment Laws and Regulations"), Business & Professions Code §§

21 17200 *et seq.*, and violated Plaintiff's rights and the rights of the non-exempt hourly employees.

22 **<u>JURISDICTION AND VENUE</u>**

23     4.     This Court has jurisdiction over all causes of action herein pursuant to the California

24 Constitution, Article VI, § 10, Code of Civil Procedure § 410.10 and Business and Professions

25 Code § 17203.

26     5.     Venue is proper in this Court under Code of Civil Procedure §§ 395 and 395.5

27 because Defendants operate and reside in this County, Plaintiff JOSE PULIDO-PEREDO resides in

28 and/or worked in this county and the injuries that are the subject of this lawsuit arose in this county.

PLAINTIFF is informed and believes and on that basis alleges that Defendants QG Printing II, LLC and Quad Graphics, Inc. are not registered as a foreign corporation with the California Secretary of State and have not designated any county in California as their principal place of business. As such, venue is proper in any county in California.

## THE PARTIES

6.      Plaintiff was employed by Defendants as a non-exempt, hourly employee within the last year, and worked out of Defendants' Warehouse in West Sacramento, California as a Forklift Operator.  Defendants hired Plaintiff in or around February 2013 and Plaintiff was terminated from his employment in or around September 2023.

7.      Plaintiff is informed, believes, and alleges that Defendants have been doing business in California at all relevant times.  Defendant QG Printing, LLC, is a company incorporated in Connecticut. Upon information and belief, Quad Graphics, Inc., is the parent company of QG Printing II, LLC, and is a corporation incorporated in Wisconsin. Upon information and belief, 74 QG Printing, LLC is an unincorporated business and is not registered as a corporation with the California Secretary of State. Upon information and belief, Quad Graphics, Inc., is the parent company of QG Printing II, LLC. Upon information and belief, Defendants own and operate a warehouse in California and have been doing business in California at all relevant times.

8.      Plaintiff is currently unaware of the true names and capacities of the defendants sued in this action by the fictitious names DOES 1 through 100, inclusive, and therefore sues those defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.  Plaintiff is informed and believes and based thereon states that the persons sued herein as DOES are in some manner responsible for the conduct, injuries and damages herein alleged.

9.      Plaintiff is informed and believes and based thereon alleges that each defendant sued in this action, including each defendant sued by the fictitious names DOES 1 through 100, inclusive, is responsible in some manner for the occurrences, controversies and damages alleged below.

10.      Plaintiff is informed and believes and based thereon alleges that DOES 1 through

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1  100, inclusive, were the agents, servants and/or employees of Defendants and, in doing the things

2  hereinafter alleged and at all times, were acting within the scope of their authority as such agents,

3  servants and employees, and with the permission and consent of Defendants.

4         11.    Plaintiff is informed and believes and based thereon alleges that Defendants ratified,

5  authorized, and consented to each and all of the acts and conduct of each other as alleged herein.

6  Each of the defendants were the agent and/or employee of the others, and the conduct of each

7  defendant herein alleged was authorized and/or ratified by the others.  The conduct of the Company

8  was carried on by and through its authorized agents, including owners, officers, directors, managers

9  and supervisors.

10  <u>**COMMON FACTS APPLICABLE TO ALL CAUSES OF ACTION**</u>

11         12.    Plaintiff is an individual who resided in the County of Yolo during the four

12  years preceding the filing of this action.  Plaintiff was employed by Defendants as a non-exempt,

13  hourly employee with the position of Forklift Operator in Sacramento County within the last four

14  years preceding the filing of this action. Plaintiff and other Class Members conduct a spectrum of

15  warehouse responsibilities, encompassing the operation of forklifts, transportation of inventory

16  from the warehouse to outdoor plant work areas, shrinking wrapping pallets, and pallet movement

17  utilizing forklift machinery.  At all relevant times, QGP issued and maintained uniform,

18  standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid

19  employees in California, including Plaintiff and other Class Members, regardless of its location or

20  position.

21         13.    QGP stands as one of the foremost marketing service providers and manufacturers in

22  the United States, delivering marketing solutions to an array of brands while also ranking as the

23  second-largest provider of commercial printing services in North America. In addition, QGP

24  maintains a global presence with approximately 96 facilities worldwide, including 34 locations

25  situated throughout the United States.  During the Class Period QGP maintained three warehouses

26  or plants in California: Merced, Riverside, and West Sacramento.

27         14.    Plaintiff is a former employee of QGP. He commenced his employment with Vertis,

28  Inc., in 2001, and worked at the West Sacramento location as a Forklift Operator. In or around

January 2013, Vertis, Inc., filed for bankruptcy and was subsequently acquired by Quad Graphics, LLC. Most employees of Vertis, Inc., were then hired by QGP. Plaintiff worked for QGP at their West Sacramento facility from February 2013 until he was terminated from QGP in September 2023. Throughout his 10 years with the Company, Plaintiff worked as a Forklift Operator and Offset Press Assistant I.  Furthermore, throughout his employment with QGP, Plaintiff typically worked 11.5 hours per day, 3-4 days per week from 7:00 a.m. to 7:00 p.m. or, from 7:00 p.m. to 7:00 a.m. By the end of his employment, Plaintiff was earning an hourly rate of $21.70. On average, Plaintiff worked 3.5 hours of daily overtime, but, as explained in further detail below, was not being fully compensated for all hours worked, including for overtime.

15.    During Plaintiff's employment with Defendants, Defendants did not provide non-exempt hourly employees, including Plaintiff, with legally compliant meal periods and rest breaks. In addition, during Plaintiff's employment with Defendants, the Company had no policy or procedures put in place that accounted for scheduled rest breaks within Class Members', including Plaintiff's, schedules.

16.    With respect to rest breaks, Plaintiff and other similarly situated hourly employees are not provided any training about statutory breaks under California law, are not scheduled to take rest breaks, and in fact, rest breaks are not made available to them.  Further, throughout the Relevant Time Period, Plaintiff and other Non-exempt hourly employees  were routinely denied the rest breaks they were entitled to under California law, including: (a) failing to provide paid rest periods of ten (10) minutes during which Plaintiff and other similarly-situated Non-exempt hourly employees   were relieved of all duty for each four (4) hours of work or major fraction thereof; (b) failing to pay Plaintiff and other Non-exempt hourly employees   one (1) hour of pay at their regular rate of compensation for each workday that a rest period was not  permitted.  Furthermore, the Company has a written "Meal Period and Rest Break Waiver" form. The waiver forms do not actually have language regarding waiving of rest periods, but the title of the document is technically facially invalid since rest periods are not waivable. However, the 2 other waivers signed in 2014 and 2015 no longer include the facially invalid title referring to rest break waiver.

17.    With respect to meal periods, non-exempt hourly employees typically work 8-12

1  hours per day. Defendants fail to schedule a meal period where non-exempt hourly employees,

2  including Plaintiff, are relieved of all duty for a 30-minute period within the first five hours of their

3  shift or pay the premium compensation for the missed or late meal period. In addition, non-exempt,

4  hourly employees never receive a second meal period for shifts in excess of ten hours or pay

5  premium compensation for the missed second meal period. Concerning the second meal period,

6  there is no evidence that non-exempt, hourly employees have agreed to waive their right to a second

7  meal period with respect to shifts lasting more than 10 hours but less than 12 hours. Non-exempt

8  hourly employees are also prevented from taking legally compliant meal and rest breaks due to

9  Defendants' policies, procedures, and practices in scheduling employees shifts.

10         18.     Defendants also discourage meal and rest periods by requiring non-exempt hourly

11  employees, including Plaintiff, to accept all assignments given to them and disciplining them for

12  not doing so. Non-exempt, hourly employees, including Plaintiff, are also not provided with a

13  second rest period for shifts lasting six to ten hours, or a third rest period for shifts in excess of ten

14  hours. Defendants do not provide non-exempt, hourly employees with paid rest periods as required

15  by law. Defendants likewise fail to authorize work-free rest periods to non-exempt hourly

16  employees where employees are relieved of all duties, and do not pay the premium compensation

17  for the missed rest periods. In addition, non-exempt hourly employees are also not paid their

18  regular hourly rate for their recovery time/rest periods, in violation of Labor Code section 226.2.

19         19.     Defendants have established a policy which does not compensate non-exempt hourly

20  employees, including Plaintiff, for the time they actually worked and as a result Defendants have

21  failed to pay all wages due including overtime wages for all hours worked and failed to pay the

22  required minimum wage for all hours worked.

23         20.     Non-exempt hourly employees, including Plaintiff, also were not reimbursed for

24  business expenses. For example, Plaintiff would use his personal vehicle to travel from the QGP

25  warehouse in Sacramento to Defendants' outdoor plant working areas. Class Members including

26  Plaintiff are not reimbursed for usage of their personal vehicles and associated mileage, as well the

27  cost of gas to travel to, between, and from QGP's warehouse and outdoor plant areas. Defendants

28  know very well that Class Members, like Plaintiff, travel to the outdoor plant locations with their

own personal vehicles as QGP provides a schedule outlining the various tasks to be completed for the outdoor plant work areas. QGP does not provide Class Members, including Plaintiff, with a company-vehicle nor do they reimburse the Class Members including Plaintiff for gas and mileage. At the warehouse, QGP directs Class Members, including Plaintiff, to use their personal phones to receive text messages from the Company on certain tasks such as what the plant needs and would speak to shipping departments over the phone for work related matters. Plaintiff also paid out of pocket to cover a portion of the cost of purchasing the required steel-toed boots, an essential and necessary part of the job in order to be protected from the heavy machinery he was using.

21.    Non-exempt hourly employees, such as the Plaintiff, frequently found themselves exceeding the standard 8-hour workday without receiving the requisite overtime premium pay, as stipulated by the pertinent wage order. Accordingly, Defendants failed to pay Plaintiff and non-exempt hourly employees for all hours worked. Additionally, Defendants improperly calculated the amount of overtime wages owed, and thus failed to pay Plaintiff all overtime wages due.

22.    With respect to waiting time penalties, the QGP failed to fully compensate former Class Members.

23.    During Plaintiff's employment with Defendants, Defendants wrongfully withheld from Plaintiff and failed to pay wages and other compensation due for all hours worked, and as otherwise required per Employment Laws and Regulations. Defendants willfully and knowingly failed to pay Plaintiff and other non-exempt, hourly employees, upon termination of employment, all accrued compensation including, but not limited to, payment of minimum wage compensation, overtime compensation, missed meal and rest period compensation and unused vacation time.

24.    During Plaintiff's employment, QGP failed to pay Class Members, including Plaintiff, for all hours worked due to its policy of only counting the time the Class Members were scheduled to work and not for any work that was done past the 8 hours. Furthermore, QGP managers would tamper with employee hours after Class Members would clock in and out. Class Members, including Plaintiff, would clock in on an electronic timeclock using employee badges and fingerprint scan for clocking in for the start of shift, meal breaks, and his shift end time. Regardless of this advanced system, Class Members' wage statements would not reflect the accurate hours they

worked or the times they clocked in and clocked out for.

25.    For example, in or around June 2023, Plaintiff began noticing his recorded hours were being cut short on his time sheets, despite working for 11.5 hours a day, his wage statements only reflected 9-10 hours of work. Other instances his wage statements reflected 41 to 42 hours of work for the when in reality he clocked in 46 hours of work in a week. Suspicious of time tampering, Plaintiff reported the hours being cut short to his supervisor, Jose Vargas. After Mr. Vargas investigated the matter, he confirmed to Plaintiff that there had been an edit to his time entries. Within that same conversation, Mr. Vargas admitted to Plaintiff that QGP supervisors have the ability to edit time entries of employees. Mr. Vargas confirmed that an adjustment to Plaintiff's time entries had been made and suspected that his new warehouse department supervisor was behind the adjustments.

26.    During Plaintiff's employment, QGP has failed to pay Plaintiff and other Class Members for all hours worked upon termination. For example, after being terminated, Plaintiff's final check included about 79 hours of unused vacation pay, however, in reality, Plaintiff was entitled to approximately 80 more hours of unused vacation hours totaling about 166 unused vacation hours he had accumulated over the course of his 10-year tenure with QGP. Plaintiff reported the discrepancy to QGP's Human Resources department however, he was told he was not entitled to those hours because he was not going to "finish out the year" with QGP. Plaintiff's and Class Members' right for earned or vested vacation wages does not turn on whether there was an express contract or policy stating that their unused vacation time would "accrue" or "carry over."

27.    During Plaintiff's employment, QGP had a COVID-19 vaccine related incentive payment called "VAI Vaccine Incentive". On one occasion, Plaintiff received the COVID vaccine related incentive payment titled, "VAI Vaccine Incentive" in the same pay period he earned overtime reflected in his wage statements. However, his overtime payment was paid out at 1.5x his straight hourly rate and did not account for the incentive pay for the purposes of calculating the regular rate of pay for overtime.

28.    To the extent that any non-exempt hourly employees, including Plaintiff, entered into any arbitration agreement with any Defendant, such agreement is void and unenforceable.  Any

such agreement was one of adhesion, executed under duress, lacked consideration and mutuality, and is otherwise void under both Labor Code § 229, 432.6 and the California Supreme Court case of *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83.

### CLASS ACTION ALLEGATIONS

29.     All current and former non-exempt, hourly employees who were employed by Defendants in California at Defendants' West Sacramento warehouse facility during the Class Period, including Plaintiff, are proposed class members (henceforth, "Class Members").

30.     The non-exempt hourly employees' duties and activities during their respective working hours and each shift are known to and directed by Defendants, and are set and controlled by Defendants.

31.     During the Class Period, Defendants have routinely failed to provide non-exempt, hourly employees with legally compliant and mandated meal and rest breaks.

32.     During the Class Period, the Defendants refused to compensate non-exempt, hourly employees for all hours worked including time during which non-exempt hourly employees were subject to Defendants' control and were suffered or permitted to work for Defendants. Defendants failed and refused to pay non-exempt hourly employees for all hours worked, including but not limited to time worked during their meal and rest periods and unused vacation time.

33.     During the Class Period, Defendants have failed and refused to provide non-exempt hourly employees with timely and accurate wage and hour statements.

34.     During the Class Period, Defendants have failed and refused to pay accrued wages and other compensation earned and due immediately to non-exempt hourly employees who were terminated, and Defendants have failed and refused to pay accrued wages and other compensation earned and due within seventy-two hours to non-exempt hourly employees who ended their employment.

36.     During the Class Period, Defendants have failed and refused to indemnify the non-exempt hourly employees for all necessary expenditures or losses incurred by them in direct consequence of the discharge of their duties, or of their obedience to the directions of Defendants.

37.    During the Class Period, Defendants have wrongfully withheld and failed to pay non-exempt, hourly employees wages and other compensation earned and due them for all hours worked and as otherwise required pursuant to the Employment Laws and Regulations, including the payment of reporting time pay and the correct amounts of overtime wages owed.

38.    During the Class Period, Defendants have refused and failed to fully compensate non-exempt hourly employees with reporting time pay.

39.    Defendants' conduct violated the Employment Laws and Regulations.  Defendants' systematic acts and practices also violated, inter alia, Business & Professions Code §§ 17200, *et seq*.

40.    Plaintiff also seeks all other compensation and all benefits required pursuant to the Employment Laws and Regulations, plus penalties and interest, owed to non-exempt hourly employees.

41.    The duties and business activities of the Class Members were essentially the same as the duties and activities of the Plaintiff.  At all times during the Class Period, all of the Class Members were employed in the same or similar job as Plaintiff (as a non-exempt, hourly employees) and were paid in the same manner and under the same standard employment procedures and practices as Plaintiff.

42.    During the Class Period, Defendants were fully aware that Plaintiff and the Class Members were required to use their personal vehicles to travel from Defendants' warehouse to the outdoor plant work areas, were using their personal cell phones to receive test messages from the Company regarding certain tasks to be completed, and were aware that employees were paying for their own protective steal toe boots, as required by Defendants.

43.    Defendants' violations of the Employment Laws and Regulations were repeated, willful and intentional.

44.    Plaintiff and the Class Members have been damaged by Defendants' conduct.

45.    While the exact number of Class Members are unknown to Plaintiff at the present time, based on information and belief, there are more than 40 such persons.  A class action is the most efficient mechanism for resolution of the claims of the Class Members.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

46.     In addition, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because the damages suffered by individual Class Members may be relatively small, and the expense and burden of individual litigation would make it impossible for such Class Members individually to redress the wrongs done to them.  Moreover, because of the similarity of the Class Members' claims, individual actions would present the risk of inconsistent adjudications subjecting the Defendants to incompatible standards of conduct.

47.     Plaintiff is currently unaware of the identities of all the Class Members.  Accordingly, Defendants should be required to provide to Plaintiff a list of all persons employed as Non-exempt hourly employees at Defendants' West Sacramento warehouse facility beginning four years prior to the filing of until the present, stating their last known addresses and telephone numbers, so that Plaintiff may give such Class Members notice of the pendency of this action and an opportunity to make an informed decision about whether to participate in it.

48.     The proposed Class that Plaintiff seeks to represent is defined as follows:

> **All Non-exempt hourly employees or any other similarly titled, non-exempt, hourly positions employed by Defendants in the State of California at Defendants' West Sacramento warehouse facility, from four years prior to the filing of this Action and continuing while this Action is pending.**

49.     There is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable:

a.      Numerosity:  While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that Defendants have employed in excess of 40 persons as non-exempt hourly employees in California during the proposed Class Period.

b.      Commonality:  There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

i.      Whether Defendants failed to compensate Plaintiff and the Class Members for all hours worked;

ii.     Whether Defendants failed to pay Plaintiff and the Class Members for all hours worked, including overtime premium pay by using a

rounding policy that was not neutral on its face or in operation in an effort to evade paying for all hours worked, including overtime pay, or otherwise correctly calculated wages and overtime premium pay in accordance with California law.

    iii.    Whether Defendants failed to pay Plaintiff and the Class Members the required minimum wage for every hour where work was performed;

    iv.

    v.    Whether Defendants failed to provide meal and rest breaks for Plaintiff and the Class Members;

    vi.    Whether Defendants owe Plaintiff and the Class Members waiting time penalties pursuant to Labor Code §203;

    vii.    Whether Defendants engaged in unfair business practices under Business and Professions Code §17200;

    viii.    The effect upon and the extent of damages suffered by Plaintiff and the Class Members and the appropriate amount of compensation.

    c.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the proposed Class. Plaintiff and all Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

    d.    <u>Adequacy of Representation</u>:  Plaintiff is a member of the proposed Class and will fairly and adequately represent and protect the interests of the Class Members.  Counsel who represents Plaintiff are competent and experienced in litigating large wage and hour and other employment class actions.

    e.    <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Questions of law and fact common to the proposed Class predominate over any questions affecting only individual Class Members. Each proposed Class Member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices of failing to pay full and correct wages, including the minimum wage and overtime premium wages, as required by law.  A class action will allow those

1    similarly situated persons to litigate their claims in the manner that is most efficient and economical

2    for the parties and the judicial system.

3                                **FIRST CAUSE OF ACTION**

4        **(Failure to Pay Compensation For All Hours Worked - Labor Code §§ 216 and 1194**

5                **By Plaintiff Individually and on Behalf of All Class Members)**

6        50.    As a separate and distinct cause of action, Plaintiff complains and realleges all of the

7    allegations contained in this complaint, and incorporates them by reference into this cause of action

8    as though fully set forth herein, excepting those allegations which are inconsistent with this cause of

9    action.

10       51.    Plaintiff brings this action to recover unpaid compensation for all hours worked,

11   including for work over eight hours in a day and over forty hours in a workweek.

12       52.    Defendants' conduct described in this Complaint violates, among other things, Labor

13   Code §§ 204, 216, 218, 218.5, 218.6, 510, 1194, and 1198 and the IWC Wage Orders.

14       53.    Defendants failed to pay Plaintiff and the Class Members for all of the actual hours

15   worked, including for work over eight hours in a day and over forty hours in a workweek.

16   Defendants knew or should have known that Plaintiff and the Class Members were working these

17   hours. Defendants willfully and knowingly failed to pay Plaintiff and other non-exempt, hourly

18   employees, upon termination of employment, all accrued compensation including, but not limited

19   to, payment of minimum wage compensation, overtime compensation, missed meal and rest period

20   compensation and unused vacation time.

21       54.    During Plaintiff's employment, QGP failed to pay Class Members, including

22   Plaintiff, for all hours worked due to its policy of only counting the time the Class Members were

23   scheduled to work and not for any work that was done past the 8 hours. Furthermore, QGP

24   managers would tamper with employee hours after Class Members would clock in and out. Class

25   Members, including Plaintiff, would clock in on an electronic timeclock using employee badges and

26   fingerprint scan for clocking in for the start of shift, meal breaks, and their shift end time.

27   Regardless of this advanced system, Class Members' wage statements would not accurately reflect

28   the actual hours they worked or the times they clocked in and clocked out for.

55.    During Plaintiff's employment, QGP has failed to pay Plaintiff and other Class Members for all hours worked upon termination. For example, after being terminated, Plaintiff's final check included about 79 hours of unused vacation pay, however, Plaintiff was actually entitled to approximately 80 more hours of unused vacation hours totaling about 166 unused vacation hours he had accumulated over the course of his 10-year tenure with QGP. Plaintiff reported the discrepancy to QGP's Human Resources department however, he was told he was not entitled to those hours because he was not going to "finish out the year" with QGP. Plaintiff's and Class Members' right for earned or vested vacation wages does not turn on whether there was an express contract or policy stating that their unused vacation time would "accrue" or "carry over."

56.    The Company's unwritten "use it or lose it" policy, which provides for no accrual whatsoever of unused paid vacations, is illegal in California. As held in *Suastez*, Section 227.3 provides that, in the absence of a collective bargaining agreement, "whenever an employer policy provides paid vacations" it is deemed a "deferred wage" that accrues, on pro rata basis, each day the employee works. (Lab. Code § 227.3; *Suastez v. Plastic Dress-Up Co.*, (1982) 31 Cal. 3d 774,779).) "Vacation pay is additional compensation for services performed, not a gift or gratuity and not an inducement for continued employment." (Id., pp. 779-780) Accordingly, any employer policy that provides for paid vacations or paid time off triggers the mandatory accrual and non-forfeiture protections of Section 227.3.

57.    Further, "accumulation of vacation time does not depend on an agreement which expressly *permits* it. Rather, unused vacation accumulates unless the employment agreement legally *prevents it*." *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1597) (Emphasis added.); *see also Amaral v. City of Hayward* (2008) 163 Cal. App. 4th 1157, 1207)("Section 227.3 does not specify the manner in which the employee must have accrued [vacation] time.") Accordingly, the California Supreme Court has held that "statutes governing conditions of employment are to be construed broadly in favor of protecting employees. [Citations.]" *Murphy v. Kenneth Cole Productions, Inc.*, (2007) 40 Cal.4th 1094, 1103; *see also Industrial Welfare Com. v. Superior Court*, (1980) 27 Cal.3d 690, 702) (statutes regulating wages, hours and working conditions must be liberally construed to promote their remedial objectives.)  Plaintiff is unaware of

the existence of any collective bargaining agreement or a reasonable "no-additional-accrual cap".

Accordingly, as a matter of law, paid vacation is a "wage" and Section 227.3 is automatically

triggered "whenever an employer contract or policy provides for paid vacations[.]" Regardless of

what an employer policy or agreement states, "an employment contract or employer policy shall not

provide for forfeiture of vested vacation time upon termination." (Labor Code § 27.3)

58.    Furthermore, QGP had a COVID-19 vaccine related incentive payment called "VAI

Vaccine Incentive". On one occasion, Plaintiff received the COVID vaccine related incentive

payment titled, "VAI Vaccine Incentive" in the same pay period he earned overtime reflected in his

wage statements. However, his overtime payment was paid out at 1.5x his straight hourly rate, and

did not account for the incentive pay for the purposes of calculating the regular rate of pay for

overtime.  *See Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal. 5th 858, 878 ("we hold that

the term 'regular rate of compensation' in section 226.7(c) has the same meaning of regular rate of

pay' in section 510(a) and encompass not only hourly wages, but all nondiscretionary payments for

work performed by the employee.").

59.    Plaintiff and the Class Members are also entitled to penalties pursuant to Paragraph

No. 20 of the applicable IWC Wage Order which provides, in addition to any other civil penalties

provided by law, any employer or any other person acting on behalf of the employer who violates,

or causes to be violated, the provisions of the IWC Wage Order, shall be subject to a civil penalty of

$50.00 (for initial violations) or $100.00 (for subsequent violations) for each underpaid employee

for each pay period during which the employee was underpaid in addition to the amount which is

sufficient to recover unpaid wages.

60.    As a result of Defendants' unlawful acts, Plaintiff and the Class Members have been

deprived of compensation in an amount according to proof at the time of trial, and are entitled to

recovery of such amounts, plus interest thereon, liquidated damages pursuant to Labor Code §

1194.2, and attorneys' fees and costs, pursuant to Labor Code §§ 1194 and 2698, in an amount

according to proof at the time of trial.  Plaintiff and the Class Members are also entitled to

additional penalties and/or liquidated damages pursuant to statute.

## SECOND CAUSE OF ACTION

**(Failure to Pay Minimum Wages - Labor Code § 1194**

**By Plaintiff Individually and on Behalf of All Class Members)**

61.     As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

62.     At all relevant times, the IWC Wage Orders contained in Title 4 of the Code of Regulations ("Wage Orders") applied to Plaintiff in Plaintiff's capacity as an employee of Defendants.  The Wage Orders and California law provided, among other things, that Plaintiff must receive minimum wage earnings for all hours worked.

63.     During the Class Period, Defendants have routinely failed to pay Class Members, including Plaintiff, the minimum wage required by the Employment Laws and Regulations for all hours worked.

64.     The Class Members, including Plaintiff, have been deprived of their rightfully earned minimum wages as a direct and proximate result of Defendants' policies and practices and Defendants' failure and refusal to pay said wages for all hours worked.  The Class Members, including Plaintiff, are entitled to recover the past wages owed to them, under the minimum wage laws, plus an additional equal amount as liquidated damages as permitted under the Wage Orders and California law, plus interest thereon and attorneys' fees and costs pursuant to Labor Code §§ 1194 and 2698, in an amount according to proof at the time of trial.

## THIRD CAUSE OF ACTION

**(Failure to Pay Overtime Compensation - By Plaintiff Individually and on Behalf of All Class Members: California Labor Code §§ 510 and 1194)**

65.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

66.     During the Class Period, Defendants routinely required non-exempt hourly

1    employees, including Plaintiff, to work over eight hours in a day and over forty hours in a

2    workweek. However, Defendants have failed and refused to pay the non-exempt hourly employees,

3    including Plaintiff, the overtime compensation required by the Employment Laws and Regulations.

4          67.     During Plaintiff's employment, QGP failed to pay Class Members, including

5    Plaintiff, for all hours worked due to its policy of only counting the time the Class Members were

6    scheduled to work and not for any work that was done past the 8 hours. Furthermore, QGP

7    managers would tamper with employee hours after Class Members would clock in and out. Class

8    Members, including Plaintiff, would clock in on an electronic timeclock using employee badges and

9    fingerprint scan for clocking in for the start of shift, meal breaks, and his shift end time. Regardless

10    of this advanced system, Class Members' wage statements would not reflect the accurate hours they

11    worked or the times they clocked in and clocked out for.

12          68.     In or around June 2023, Plaintiff began noticing his recorded hours were being cut

13    short on his time sheets, despite working for 11.5 hours a day, his wage statements only reflected 9-

14    10 hours of work. Other instances his wage statements reflected 41 to 42 hours of work for the

15    when in reality he clocked in 46 hours of work in a week. Suspicious of time tampering, Plaintiff

16    reported the hours being cut short to his supervisor, Jose Vargas. After Mr. Vargas investigated the

17    matter he confirmed to Plaintiff that there had been an edit to his time entries. Within that same

18    conversation, Mr. Vargas admitted to Plaintiff that QGP supervisors have the ability to edit time

19    entries of employees. Mr. Vargas confirmed that an adjustment to Plaintiff's time entries had been

20    made and suspected that his new warehouse department supervisor was behind the adjustments.

21          69.     Non-exempt hourly employees, including Plaintiff, have been deprived of their

22    rightfully earned overtime compensation as a direct and proximate result of Defendants' policies

23    and practices and Defendants' failure and refusal to pay that compensation. The Non-exempt

24    hourly employees, including Plaintiff, are entitled to recover such amounts, plus interest, attorney's

25    fees and costs.

26                             **FOURTH CAUSE OF ACTION**

27                **(For Waiting Time Penalties - Labor Code §§ 201-203**

28              **By Plaintiff Individually and on Behalf of All Class Members)**

70.      As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

71.      During the Class Period, Defendants failed to pay accrued wages and other compensation due immediately to each Class Member who was terminated, and failed to pay accrued wages and other compensation due within seventy-two hours to each Class Member, including Plaintiff, who ended their employment.

72.      Labor Code § 201 requires an employer who discharges an employee to pay compensation due and owing to said employee immediately upon discharge.  Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201, the employer is liable for waiting time penalties in the form of continued compensation for up to 30 work days.

73.      Defendants, and each of them, willfully failed and refused, and continue to willfully fail and refuse, to timely pay compensation due to Class Members upon termination or resignation, as required by Labor Code § 201.  As a result, Defendants, and each of them, are liable to Plaintiff and all Class Members similarly situated for waiting time penalties, together with interest thereon, pursuant to Labor Code § 203, as well as all other available remedies, in an amount according to proof at the time of trial.

## **FIFTH CAUSE OF ACTION**

### **(Failure to Provide Meal and Rest Periods - Labor Code §§ 226.7 and 512**

### **By Plaintiff Individually and on Behalf of All Class Members)**

74.      As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

75.      During the Class Period, Defendants have failed to provide Non-exempt hourly employees, including Plaintiff, legally compliant meal and rest periods during their work shifts, and

have failed to compensate non-exempt hourly employees, including Plaintiff, for those meal and rest periods, as required by Labor Code § 226.7 and the other applicable sections of the Employment Laws and Regulations.

76.    The non-exempt hourly employees, including Plaintiff, have been deprived of their rightfully earned compensation for meal and rest periods as a direct and proximate result of Defendants' policies and practices and Defendants' failure and refusal to pay that compensation. The Non-exempt hourly employees, including Plaintiff, are entitled to recover such amounts pursuant to Labor Code § 226.7(b), plus interest.

**SIXTH CAUSE OF ACTION**

**(Reimbursement of Employment Expenses - Labor Code § 2802**

**By Plaintiff Individually and on Behalf of All Class Members)**

77.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiff alleges as follows a claim of relief.

78.    Cal. Labor Code § 2802 provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . . [which includes] all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

79.    As a direct consequence of discharging their duties for Defendants and/or obeying Defendants' directions, Plaintiff and putative class members have necessarily incurred expenses for which they have not been indemnified by Defendants, including the data usage on cellular phones, mileage and gas for traveling to and between Defendants' warehouse and outdoor plant areas, paying out of pocket for portion of the cost of purchasing the required steel-toed boots; and the attorneys' fees incurred to enforce Plaintiff's and putative class members' rights under Cal. Labor Code § 2802.

80.    Defendants have failed to indemnify or in any manner reimburse Plaintiff and putative class members for these expenditures and losses.

81.    By requiring Plaintiff and similarly situated non-exempt hourly employees to pay

20

expenses and cover losses that they incurred in direct consequence of the discharge of their duties for Defendants and/or in obedience of Defendants' direction, Defendants have violated and continues to violate Cal. Labor Code § 2802.

## SEVENTH CAUSE OF ACTION

**(For Unfair Competition - Business & Professions Code § 17200, et seq.**

**By Plaintiff Individually and on Behalf of All Class Members)**

82.    As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

83.    As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Class Members, including Plaintiff, and members of the public.  Defendants should be made to disgorge their ill-gotten gains and to restore them to Class Members, including Plaintiff.

84.    Defendants' unfair business practices violate the Unfair Competition Laws and entitle Plaintiff to seek preliminary and permanent injunctive relief including, but not limited to, orders that Defendants account for, disgorge and restore to the Class Members, including Plaintiff, the wages and other compensation unlawfully withheld from them.

85.    In addition to the actual damages caused by the unlawful conversion, the Class Members, including Plaintiff, are entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendants as follows:

1.    For an Order certifying the First through Seventh Causes of Action as a class action;

2.    For an Order appointing Plaintiff's counsel as Class counsel;

3.    For compensatory damages in an amount to be ascertained at trial;

4.    For restitution in an amount to be ascertained at trial;

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

5.    For punitive and exemplary damages in an amount to be ascertained at trial;

6.    For all penalties allowed by law;

7.    For prejudgment interest;

8.    For reasonable attorneys' fees pursuant to Labor Code §§ 1194, 510, and 2802;

9.    For costs of suit incurred herein;

10.    For disgorgement of profits garnered as a result of Defendants' unlawful failure to pay wages, including overtime wages, earned; and

11.    For such further relief as the Court may deem appropriate.

DATED:    October 31, 2024    **BOYAMIAN LAW, INC.**
**CAPSTONE LAW APC**

By: _____
MICHAEL H. BOYAMIAN
Attorney for Plaintiff JOSE PULIDO-PEREDO,
individually and on behalf of all others
similarly situated

## **DEMAND FOR JURY TRIAL**

Plaintiff JOSE PULIDO-PEREDO, individually, and on behalf of all similarly situated individuals, demands jury trial of this matter.

DATED:    October 31, 2024    **BOYAMIAN LAW, INC.**
**CAPSTONE LAW APC**

By: _____
MICHAEL H. BOYAMIAN
Attorney for Plaintiff JOSE PULIDO-PEREDO,
individually and on behalf of all others similarly
situated

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 550 North Brand Boulevard, 15th Floor, Glendale, California 91203.  On November 4, 2024, I served, in the manner indicated below, the foregoing document described as:

          FIRST AMENDED COMPLAINT AND DEMAND
          FOR JURY TRIAL

on the interested parties in this action as follows:

| | |
|---|---|
| GREGORY G. ISKANDER, Bar No. 200215<br>giskander@littler.com<br>BENJAMIN SANCHEZ, Bar No. 313871<br>bsanchez@littler.com<br>LITTLER MENDELSON, P.C.<br>Treat Towers<br>1255 Treat Boulevard, Suite 600<br>Walnut Creek, CA 94597<br>Telephone: 925.932.2468<br>Facsimile: 925.946.9809 | Attorneys for Defendant,<br>QG PRINTING II, LLC AND QUAD GRAPHICS, INC. |

\_\_\_\_    BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Glendale, California, with postage thereon fully prepaid.  I am readily familiar with the firms's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to (C.C.P. §1013(c)(d)).

\_\_X\_\_    BY ELECTRONIC SERVICE: by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth above.

\_\_\_\_    STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

\_\_X\_\_    FEDERAL: I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

    Executed on  November 4 , 2024 at Glendale, California.

                            _____
                            David Chibukhchyan